# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

RUBEN PHILLIP FRANCO,
Defendant and Appellant.

S233973

Second Appellate District, Division Seven
B260447

Los Angeles County Superior Court
VA125859

December 10, 2018

Justice Chin authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger, and Pollak* concurred.

---

\*     Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. FRANCO

S233973

Opinion of the Court by Chin, J.

Proposition 47, a recent initiative measure, generally makes specified types of forgery misdemeanors if the "value" of the forged instrument does not exceed $950. (Pen. Code, § 473, subd. (b).)[1]  We must decide how to determine the value of a forged check.  Because forgery requires the intent to defraud, and the stated value of the forged check indicates the severity of the intended fraud, we conclude that when the check contains a stated value, that amount is its value for this purpose.  We affirm the judgment of the Court of Appeal in this case, which reached a similar conclusion, and disapprove *People v. Lowery* (2017) 8 Cal.App.5th 533, review granted April 19, 2017, S240615 (*Lowery*), to the extent it is inconsistent with this conclusion.

## I.  FACTUAL AND PROCEDURAL HISTORY

In July 2012, defendant Ruben Phillip Franco was found in possession of a recently stolen check containing the owner's forged signature and made out in the amount of $1,500.  The name of the payee was left blank.  As relevant here, defendant was charged with and, on January 16, 2013, he pleaded guilty to, forgery under section 475, subdivision (a).  On that date, the court sentenced him to state prison but suspended the sentence and placed him on probation.

---

[1]    All further statutory citations are to the Penal Code.

On November 19, 2014, the court found that defendant had violated probation. At the hearing, defendant requested the court to resentence him as a misdemeanant under the recently enacted Proposition 47. He argued that the check's value was less than $950 dollars. The court denied the request and imposed the previously suspended prison sentence. Defendant appealed.

Defendant argued in the Court of Appeal that the value of the check "corresponds not to the stated amount on the face of the forged instrument but to the intrinsic value of the instrument itself." (*People v. Franco* (2016) 245 Cal.App.4th 679, 683 (*Franco*).) The Court of Appeal disagreed. It concluded that the value of a forged instrument under section 473, subdivision (b), is its face value. (*Franco*, at p. 684.) Because the check's face value of $1,500 exceeded $950, it affirmed the judgment, although it ordered a minor error in the abstract of judgment corrected.

We granted defendant's petition for review, which raised the question of how to evaluate a forged check under section 473, subdivision (b).

## II. DISCUSSION

Defendant was convicted of forgery under section 475, subdivision (a), which provides: "Every person who possesses or receives, with the intent to pass or facilitate the passage or utterance of any forged, altered, or counterfeit items, or completed items contained in subdivision (d) of Section 470 with intent to defraud, knowing the same to be forged, altered, or counterfeit, is guilty of forgery." Section 470, subdivision (d), contains a long list of items that can be the subject of forgery including, for example, a check, a lottery ticket, a power of

attorney, a stock certificate, a document to convey land, an acknowledgment of a notary public, and another person's seal.[2]

When defendant pleaded guilty and was sentenced, all forgery was a so-called "wobbler," that is, punishable as either a

---

[2] Section 470, subdivision (d), provides in its entirety: "Every person who, with the intent to defraud, falsely makes, alters, forges, or counterfeits, utters, publishes, passes or attempts or offers to pass, as true and genuine, any of the following items, knowing the same to be false, altered, forged, or counterfeited, is guilty of forgery: any check, bond, bank bill, or note, cashier's check, traveler's check, money order, post note, draft, any controller's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money, receipt for money or goods, bill of exchange, promissory note, order, or any assignment of any bond, writing obligatory, or other contract for money or other property, contract, due bill for payment of money or property, receipt for money or property, passage ticket, lottery ticket or share purporting to be issued under the California State Lottery Act of 1984, trading stamp, power of attorney, certificate of ownership or other document evidencing ownership of a vehicle or undocumented vessel, or any certificate of any share, right, or interest in the stock of any corporation or association, or the delivery of goods or chattels of any kind, or for the delivery of any instrument or writing, or acquittance, release or discharge of any debt, account, suit, action, demand, or any other thing, real or personal, or any transfer or assurance of money, certificate or shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or falsifies the acknowledgment of any notary public, or any notary public who issues an acknowledgment knowing it to be false; or any matter described in subdivision (b)."

Subdivision (b) of section 470 describes "the seal or handwriting of another."

felony or a misdemeanor. (*People v. Gonzales* (2018) 6 Cal.5th 44, 46; see former § 473; Stats. 2011, ch. 15, § 360.) Accordingly, he was originally sentenced to state prison with the sentence suspended. But the law has since changed.

"[I]n the November 2014 election, California voters enacted Proposition 47, the Safe Neighborhoods and Schools Act. [Citations.] Proposition 47 downgrades several felonies and wobblers to misdemeanors and permits persons convicted of those felonies and wobblers serving felony sentences at the time the law took effect to have their offenses retroactively redesignated as misdemeanors under certain circumstances by filing a petition." (*People v. Gonzales*, *supra*, 6 Cal.5th at p. 48.)

Forgery is among the crimes that Proposition 47 affected. As amended by that proposition, section 473, subdivision (b), provides: "Notwithstanding subdivision (a) [which generally makes forgery a wobbler], any person who is guilty of forgery relating to a check, bond, bank bill, note, cashier's check, traveler's check, or money order, where the *value* of the check, bond, bank bill, note, cashier's check, traveler's check, or money order does not exceed nine hundred fifty dollars ($950)," is, with exceptions not applicable here, punishable only by a misdemeanor sentence. (Italics added.) Proposition 47 therefore reclassified as a misdemeanor only forgery of the instruments expressly listed in section 473, subdivision (b), when those instruments have a value not exceeding $950. Forgery of the remaining types of instruments listed in section 470, subdivision (d), remains a wobbler, without regard to their value.

We must decide what the value of a forged check is for this purpose. The question arises only under Proposition 47, because

the value of the forged instrument was previously irrelevant to the crime of forgery. (*Buck v. Superior Court* (1965) 232 Cal.App.2d 153, 162.)

Three possible tests have been proposed. In the Court of Appeal here and in *Lowery, supra*, 8 Cal.App.5th 533, review granted, the defendants argued that the value of a forged check was merely the intrinsic value of the paper itself. They relied on *People v. Cuellar* (2008) 165 Cal.App.4th 833, which held that, for purposes of theft, the value of a forged check was only the value of the paper. (*Id.* at pp. 838-839.)

The Court of Appeal here held, and two Courts of Appeal have stated, that, for purposes of forgery, the value is the amount written on the check. (*People v. Gonzales* (2016) 6 Cal.App.5th 1067, 1072, fn. 6, review granted February 15, 2017, S240044, aff'd. on another ground (2018) 6 Cal.5th 44; *People v. Salmorin* (2016) 1 Cal.App.5th 738, 744-745; *Franco, supra*, 245 Cal.App.4th at pp. 683-684.)

The court in *Lowery, supra*, 8 Cal.App.5th 533, review granted, took a third position after we granted review in this case. It rejected both the defendant's position (the value is the intrinsic value of the paper) and the prosecution's position (the value is the amount stated on the check). It held instead that "the term 'value' in Penal Code section 473 refers to the actual monetary worth of the check — that is, the amount the defendant could obtain for the check, not the amount for which it was written." (*Id.* at p. 541.) *Lowery* explained that "[w]hile the written value of a forged check may be substantial evidence of its monetary worth, a defendant may be able to show an uncashed check was worth less than its written value — e.g., by presenting evidence that the check was unlikely to be cashed."

(*Id*. at p. 536.) In this court, defendant urges the *Lowery* position. Applying that test, he argues that, because it was unlikely to be cashed, the value of the check in this case is no more than the intrinsic value of the paper it is written on, which is obviously much less than $950.

We agree with both the Court of Appeal here and the *Lowery* court in rejecting the argument that the value of a forged check is only the intrinsic value of the paper. *People v. Cuellar*, *supra*, 165 Cal.App.4th 833, was decided before the adoption of Proposition 47. It considered the value of a forged check only for purposes of theft, not for purposes of forgery under section 473, subdivision (b). The intrinsic value of a piece of paper will never exceed $950. But as the *Lowery* court explained, the language of section 473, subdivision (b), "makes clear that check forgery may be punishable as a felony if the value of the check exceeds $950. If, as Lowery argues, the value of a forged check is never more than the paper on which it is written, the language defining the $950 limit would be meaningless. This would violate the rule that '[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22 [56 Cal.Rptr.2d 706, 923 P.2d 1].)" (*Lowery*, *supra*, 8 Cal.App.5th at pp. 540-541, rev.gr.) Or, as the Court of Appeal here explained, we should reject the argument that the value is just the intrinsic value of the paper "in order to avoid absurd consequences." (*Franco*, *supra*, 245 Cal.App.4th at p. 684, citing *Flannery v. Prentice* (2001) 26 Cal.4th 572, 578.)[3]

---

[3] We express no view on the relevance, if any, of *People v. Cuellar*, *supra*, 165 Cal.App.4th 833, to Proposition 47's provisions concerning theft.

But we disagree with *Lowery*'s attempt to find a test other than the amount written on the forged check. We look first to the statutory language, giving the words their ordinary and usual meaning, and considering them in the statutory context. (*People v. Gonzales*, *supra*, 6 Cal.5th at pp. 49-50.) As noted, section 470, subdivision (d), lists many instruments that can be the subject of forgery. Some of the listed instruments will normally contain a stated value, but many will not — for example, a lottery ticket, a power of attorney, a stock certificate, a document to convey land, an acknowledgment of a notary public, or someone's seal. But the instruments listed in section 473, subdivision (b) — "a check, bond, bank bill, note, cashier's check, traveler's check, or money order" — all generally do contain a stated value. By contrast, forgery of the instruments listed in section 470, subdivision (d), that do not have a face value remains a wobbler. This circumstance strongly suggests that the electorate was referring to face value when, in Proposition 47, it reclassified only a subset of the forgery crimes based on their "value."

*Lowery* borrowed its test from section 484, subdivision (a), the statute that defines the crime of theft. (*Lowery*, *supra*, 8 Cal.App.5th at p. 539, rev.gr.) That subdivision states that "[i]n determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test . . . ." (§ 484, subd. (a).) In *People v. Romanowski* (2017) 2 Cal.5th 903, decided shortly after *Lowery*, we held that section 484, subdivision (a)'s "reasonable and fair market value" test applied to determine the value of stolen access card information under Proposition 47's provisions concerning theft. We explained that "courts may consider evidence related to the possibility of illicit sales when determining the market value of

stolen access card information." (*Romanowski*, at p. 906.) Defendant argues something similar should apply here.

But *People v. Romanowski*, *supra*, 2 Cal.5th 903, was a theft case. Section 484, subdivision (a), states the test only "for the purposes of this section," i.e., the section defining theft. Forgery is different than theft. "As was said in 1896, '[A]s to what constitutes forgery of instruments which are subjects of forgery, the definitions at common law and by our code are the same. "Forgery, at common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." ' " (*Lewis v. Superior Court* (1990) 217 Cal.App.3d 379, 387, quoting *People v. Bendit* (1896) 111 Cal. 274, 280.) "The crime of forgery is complete when one makes or passes an incorrectly named instrument with intent to defraud, prejudice, or damage, and proof of loss or detriment is immaterial." (*Buck v. Superior Court*, *supra*, 232 Cal.App.2d at p. 162.) "[T]he test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine." (*People v. McKenna* (1938) 11 Cal.2d 327, 332.)

Additionally, the forged instrument must be capable of defrauding someone, although that someone might be gullible. "[T]o constitute the crime of forgery, the forged instrument must be one which, if genuine, must be legally capable of working the intended fraud or injury. . . . [¶] . . . [¶]  The purpose of the statute against forgery is to protect society against the fabrication, falsification and the uttering of instruments which might be acted upon as being genuine.  The law should protect, in this respect, the members of the community who may be ignorant or gullible as well as those who are cautious and aware of the legal requirements of a genuine instrument." (*People v.*

*Jones* (1962) 210 Cal.App.2d 805, 808-809.) However, an instrument will not be the subject of a forgery if "it is so defective on its face that, as a matter of law, it is not capable of defrauding anyone." (*Id*. at p. 809.)

Thus, the gravamen of forgery is the intent to defraud, not an actual injury. The amount written on the check is generally the best indicator of the extent of the intended fraud, and thus of the severity of the crime. Moreover, forgery does not merely concern the specific intended victim. As this court explained long ago, "A very large part of the business of civilized countries is done by means of negotiable instruments. These are rarely presented by the makers, but are paid to others on the faith that the signatures, and the bodies of the instruments, are genuine. The business of a bank would come to a standstill if the paying teller would not pay any check until he could communicate with the drawer. Hence, if there were many successful forgeries there would be the utmost confusion in business circles." (*People v. Bendit, supra*, 111 Cal. at p. 281.) Or, as more recently explained, forgery "is maintained as a distinct, felony offense from theft by false pretenses because forgery threatens the system of written instruments upon which modern commerce critically depends." (*Lewis v. Superior Court, supra*, 217 Cal.App.3d at p. 388.) The greater the stated value on the forged instrument, the greater the threat to the system.

Interpreting the word "value" to mean stated value would also make the most sense to the majority of voters and thus, most likely, be what those voters intended. Not only does the amount written on the check reflect the severity of the intended fraud, it is also a readily ascertainable amount. Attempting somehow to factor in the likelihood the check will be cashed or other unspecified circumstances, as the *Lowery* test would do

(*Lowery*, *supra*, 8 Cal.App.5th at p. 536, rev.gr.), could only lead to uncertainty.

In support of their respective positions, the parties discuss dictionary definitions of the word "value" and the information provided to the voters in the official ballot pamphlet for Proposition 47. As we explain, both sources are inconclusive. Neither the dictionary definitions nor the ballot information limits our interpretation of the word "value" in section 473, subdivision (b).

In support of the argument that the value is limited to the check's fair market value, defendant and the *Lowery* court cite definitions such as the one in Black's Law Dictionary. (*Lowery*, *supra*, 8 Cal.App.5th at p. 539, rev.gr.) That dictionary defines "value" as, among other things, "[t]he monetary worth *or price* of something; the amount of goods, services, or money that something commands in an exchange." (Black's Law Dict. (10th ed.) p. 1784, col. 2, italics added.) This language, including the words "or price," seems broad enough to encompass the amount stated on a forged check.

Similarly, the ballot information is inconclusive. The analysis of the Legislative Analyst stated this regarding Proposition 47's effect on check forgery: "Under current law, it is a wobbler crime to forge a check of *any amount*. Under this measure, forging a check worth $950 or less would always be a misdemeanor" subject to an exception not applicable here. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.) In this context, we think that, if anything, voters would assume the reference in the first sentence to "any amount" meant the amount written on the check. But the ballot information does not address this

precise question, so we do not rely heavily on it in reaching our conclusion.

Noting that the electorate is presumed to be aware of existing law when it enacts an initiative measure (*People v. Hernandez* (2003) 30 Cal.4th 835, 867), defendant argues that the electorate must have been aware than in some contexts, primarily theft cases, the word "value" means the fair market value, thus indicating an intent to have the same meaning attach to a forged check. If so, the electorate was also presumably aware that, until Proposition 47 was enacted, the value of a forged check was irrelevant when the defendant was convicted of forgery, and that forgery and theft are quite different. No reason appears to assume that the electorate would believe the same test would apply to both crimes. Moreover, the argument proves too much. When the electorate enacted Proposition 47, case law had held that the value of a forged check for purposes of theft was only the intrinsic value of the paper it was written on. (*People v. Cuellar, supra*, 165 Cal.App.4th 833.) But, as explained above, applying that rule to forgery would have made section 473, subdivision (b)'s reference to the $950 limit (as well as the Legislative Analyst's analysis in the ballot materials) meaningless, something the electorate cannot have intended.

In explaining why, in its view, the amount stated on the check should not establish its value under section 473, subdivision (b), and instead some lower amount might be appropriate, the *Lowery* court said that, "[f]or example, a check may be so ineptly forged that even the most credulous clerk would refuse to honor it. A poorly forged check for a million dollars is unlikely to be cashed, and it makes little sense to assign the written value to such a check." (*Lowery, supra*, 8

Cal.App.5th at p. 541, rev.gr.)  However, a poorly forged check for a million dollars that even the most credulous clerk would refuse to honor probably would not be the proper subject of a forgery conviction, but instead would be an instrument that "is so defective on its face that, as a matter of law, it is not capable of defrauding anyone." (*People v. Jones*, supra, 210 Cal.App.2d at p. 809.)  But if a check made out for a million dollars *was* capable of defrauding someone, and the defendant did intend to defraud (as the crime of forgery requires), the amount stated would reasonably indicate the severity of the crime.  In this case, defendant pleaded guilty, thus admitting that the instrument was the proper subject of forgery.

Defendant argues "that the rule of lenity, 'whereby courts must resolve doubts as to the meaning of a statute in a criminal defendant's favor' " (*People v. Soto* (2018) 4 Cal.5th 968, 979-980), compels us to adopt his interpretation of section 473, subdivision (b).  Even assuming the rule applies to a statute that potentially ameliorates the punishment for a crime *after* it was committed, we disagree.  This is not a case in which the competing interpretations " 'stand in relative equipoise.' " (*Soto*, at p. 980.)  Instead, we can fairly discern the electorate's intent that the amount written on the forged check establishes its value for this purpose.  (*Ibid.*)

### III.  CONCLUSION

We affirm the judgment of the Court of Appeal and disapprove *People v. Lowery*, *supra*, 8 Cal.App.5th 533, review granted, to the extent it is inconsistent with this opinion.

**CHIN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**POLLAK, J.**[*]

---

[*]     Associate Justice of the Court of Appeal, First Appellate District, Division Three assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Franco

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 245 Cal.App.4th 679
**Rehearing Granted**

_____

**Opinion No.** S233973
**Date Filed:** December 10, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Roger T. Ito

_____

**Counsel:**

Allison H. Ting, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez, Louis W. Karlin and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Allison H. Ting
Law Office of Allison H. Ting
1158 26th Street, #609
Santa Monica, CA  90403
(310) 826-4592

Theresa A. Patterson
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  9013
(213) 620-6004